Daniels, J.
The assignment on its face provided for no unlawful disposition of the, surplus of the partnership property to which each partner might be entitled, after the payment of the partnership liabilities. The surplus which might be owned by each partner was first directed to be applied in payment of his individual creditors, after the payment in full of all partnership debts, and if it proved insufficient for the purpose then to be divided ratably among his creditors. That direction was what the law required should be given, and it was free from all well founded objections.
If the firm did in fact have a clear surplus of assets in September, 1885, amounting to the sum of $50,000, and owed no greater sum than $40,000, then the great change-in their financial condition, when the assignment was made, would be some evidence of a fraudulent disposition of their property in the meantime, as long as the fact was. that they encountered no heavy or serious losses. But the statement upon which this fact has been assumed, was as positively denied by the defendant as it was testified to-have been made. And the court was impressed with the truth of this denial. And, upon this appeal, the view which was considered truthful by the court at the trial must be followed, for no other evidence was given having a tendency to overthrow the truth of the denial.
The employment of one of the assignors, by the assignee,, was a fact of itself having a tendency to support the inference that the assignment may have been prompted by an unlawful intent. But it was fully and credibly explained by the assignee and consistently with the good faith of the assignment. The court accepted the explanation, and no reason has been disclosed for questioning the correctness of' this conclusion.
The remaining objection to the assignment stands upon the money withdrawn by each of the assignors from the funds of the firm. That, however, did not necessarily avoid the assignment, even if the withdrawal of the funds resulted from a fraudulent design. For where the assignment may afterwards be legally and honestly made, it could not be set aside because the assignors had previously disposed of property to defraud creditors. That act would be *463 evidence, it is true, against the assignment for it might he concluded to have been produced as a part of a common fraudulent intent. But to have that -effect there should appear to be some connection between the assignment and the preceding unlawful act.
It should appear to have been part of a common design to defraud. There should be some logical sequence between the intent and the act assailed; such a sequence has not been shown in this case. For it is not to be inferred from the small sum made use of by one of the partners to pay his own private debt, and the amounts withdrawn by each from the partnership funds for the temporary support of their respective families, that they were governed by an intent to defraud their creditors, when they afterwards made the assignment devoting the residue of their assets to the payment of their creditors’ debts; withdrawing these sums from the partnership funds may have been improper acts on the part of the insolvent debtors. But they were not so necessarily so as to impeach the general assignment. If that had contained a preference of the individual debt paid, united with a direction to pay it out of the partnership property, the result would be different, for it would then become an unlawful portion of the assignment itself. But that is not the fact; no such direction or preference has been made. The act was separate and distinct from the assignment, and therefore not entitled to the effect of setting it aside as long as the assignment has been found to have been made in good faith, as it very well might be proven by the evidence given on the trial. For similar reasons, it cannot be condemned on account of the small amounts taken by the assignors to support their families for a short period of future time. Besides that, the law permits an. insolvent debtor to withhold sixty days’ provisions for his family from the claims and demands of his creditors. Code Civil Pro., § 1390, subd. 4; § 2463.
And the money retained by these debtors may very reasonably be presumed not to have transcended this statutory limit, but to have been within the spirit and protection of this prescribed limit. If the fact had been otherwise the plaintiffs should have proved it upon the trial.
The authorities brought to the attention of the court by the plaintiffs’ counsel warrant the adoption of no different view of these acts. An assignment may be set aside, or an attachment sustained where the amounts withdrawn from the assets, or previously disposed of by the debtors, evince the general purpose to have been to defraud the creditors, and the several acts to have been component parts of one entire fraudulent scheme. But this is not a case of that description The assignment was not legally impeached *464 by anything contained in it, or by the acts of the debtors preceding or attending its execution, and the judgment from which the appeal has been taken should be affirmed, with costs.
Bartlett and Brady, JJ., concur.